## A90A1082. THE STATE v. ROBERTS.
(397 SE2d 183)

SOGNIER, Judge.

The State appeals from the trial court's grant of Robert James Roberts' motion to suppress evidence seized during a warrantless search of his person.

At the hearing on appellee's motion the State presented Jimmy Terrell, Chief of Police for the City of Winder, who testified that around 10:00 p.m. on March 24, 1989, he was escorting a city councilman on a patrol of East Winder in Barrow County, in an area known by the police as the locus for a large number of illegal drug transactions. Terrell was driving an unmarked police car and wearing civilian clothes except for the police badge on his windbreaker. Terrell pulled into a parking lot reserved for the residents of a nearby public housing apartment complex, which was across the street from a gameroom/bar run by the American Legion. Terrell stated he saw appellee with another man standing in a parking space between two cars. As he pulled into the lot, Terrell noticed that the man with appellee looked over his shoulder and immediately turned and walked quickly toward the apartments. Terrell stated that appellee looked up, then immediately got into a car with a Walton County tag. As appellee was entering his car, Terrell pulled up behind the car, walked to the driver's door, and identified himself as a police officer. Terrell testified that appellee had not closed the car door at the time he approached. Terrell asked for identification and asked appellee if he knew he was in an unauthorized parking area. Appellee responded that he did not see the signs indicating "Authorized Parking Only," and after Terrell asked appellee, "Were you up here dealing cocaine?" appellee told Terrell no, that he was visiting a friend. When appellee got out of the car Terrell noticed a chain hanging out from under appellee's sweatshirt and inquired about it. When appellee said it was a wallet, Terrell testified that he said, "May I see it?" and that appellee pulled it out from under his shirt and handed it to Terrell. Terrell then opened the wallet and in the compartment where bills were kept observed three rocks, subsequently found to be cocaine. He also observed three small brown manila envelopes commonly known in the drug trade as "nickel bags" for marijuana. Terrell then arrested appellee. When asked by the prosecutor why he initiated the conversation with appellee, Terrell listed the other man's swift departure, appellee's nervousness when Terrell approached him, the large number of drug transactions that occurred in that area, and the out of county tag on appellee's car.

On cross-examination Terrell stated that the police had an agreement with the housing authority to patrol the parking areas and remove vehicles of those not visiting or living in the apartments. He

acknowledged that he parked his unmarked police car so as to block appellee's car, even though there were empty parking spaces he could have used instead. He also acknowledged that appellee's statement that he was visiting a friend was an "acceptable excuse" for appellee's presence in the lot. He testified that because of an earlier experience in which a party had placed a weapon on a chain similar to the one appellee was wearing, when appellee told him the chain held a wallet he asked to see the wallet. However, upon being shown the wallet, Terrell said he knew it was not a weapon and that he did not open it on the belief it might contain a weapon. Rather, he testified that when appellee handed him the wallet at Terrell's request, he "felt like [he] had the right to open it" and look into it at that point.

Appellee testified that he came to Winder to visit a friend, Sammy Harris, who lived in the area, that they had visited the bar across the street, and that after talking a few minutes in the parking lot Harris was preparing to leave when Terrell pulled into the parking lot. Harris testified confirming appellee's testimony and stated he left the lot swiftly because he knew Terrell and did not want to get arrested for public drunkenness. Appellee testified that as Terrell was pulling into the lot he got into his car and had it in reverse when his exit was blocked by Terrell's car. Appellee stated he kept his driver's license and proof of insurance attached to his car's sun visor and handed over these documents when Terrell approached him. He stated he informed Terrell that it was Harris he was visiting and denied giving Terrell his wallet, testifying that Terrell took it from him by pulling on the chain at his waist.

The trial court noted that the only conceivable criminal activity evidenced by Terrell's initial observation of appellee was the possible illegal parking of the car, and found that Terrell's stop and investigation of appellee did not appear to be linked to a suspicion of illegal parking. The trial court further found that Terrell's search of appellee did not appear to be related to any suspicion of the illegal parking violation for which appellee was stopped. Considering all the circumstances adduced at the hearing, the trial court found that the State had not established by a preponderance of the evidence that appellee voluntarily consented to the search of his wallet, and that no reasonable cause for appellee's arrest existed when the search was made.

The State argues that the trial court's grant of appellee's motion to suppress was error, contending that this case is controlled by our recent opinion in *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989). In *Billoups* an officer in a marked patrol car turned a corner in a high drug area at 2:30 a.m. and noticed two men break and run at the sight of the patrol car. The officer pursued the defendant on foot and, upon apprehending the defendant, conducted a patdown search and discovered a film cannister in the defendant's pocket, which the

officer searched based on past experiences that such cannisters were often used to contain razor blades, but was found by the officer at that time to contain contraband. Pointing to the time, the location, and the defendant's flight from the officer, we reversed the trial court's grant of the defendant's motion to suppress the evidence seized by the officer. Those facts are in marked contrast to the case at bar where at 10:30 p.m. appellee was found standing in a parking lot across the street from a gameroom/bar, a location where people are likely to congregate at that time of night; no evidence was adduced he knew the unmarked car that pulled into the lot contained a police officer; the officer testified that the driver's side door was still open when he approached the vehicle; and the officer admitted that his search of appellee's wallet was not based on any belief that it contained a weapon. Accordingly, we do not agree with the State that *Billoups* is controlling here.

The State also asserts that the evidence clearly shows that appellee consented to the search. However, it is well established that factual and credibility determinations made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. *State v. Wingo,* 191 Ga. App. 539, 541 (382 SE2d 384) (1989). There was evidence to support the trial court's finding that Chief Terrell acted without suspicion of criminal activity on appellee's part when he searched appellee's wallet and that appellee did not voluntarily consent to that search. Hence, we may not disturb the trial court's ruling on appellee's motion. Id.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 11, 1990.

*Timothy G. Madison, District Attorney, Brenda Joy Bernstein, Assistant District Attorney,* for appellant.
*Strauss & Walker, John T. Strauss,* for appellee.